This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                        **No. 34,763**

**SELINA MADRID,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Aaron Baca, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Public Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**VARGAS, Judge.**

{1}     Defendant, Selina Madrid, was convicted, pursuant to a conditional plea, of driving under the influence of intoxicating liquor (DWI). NMSA 1978, § 66-8-102 (2010). She reserved her right to appeal the metropolitan court's denial of her motion to suppress based on pretext. On appeal, Defendant argues the stop was pretextual, that the location of the stop was a de facto sobriety checkpoint, and that the officer impermissibly expanded the scope of the original stop. We do not address Defendant's arguments regarding the de facto sobriety checkpoint or the expansion of the scope of the stop because she failed to reserve her right to appeal those issues. We affirm the metropolitan court's decision with regard to pretext.

**I.      BACKGROUND**

{2}     On July 2, 2012, after observing Defendant roll through a stop sign at Oak Street and Tijeras Avenue in Albuquerque, New Mexico without coming to a complete stop, Albuquerque Police Officer John Kelly pulled her over. Prior to approaching her car, Officer Kelly noted nothing out of the ordinary in the distance Defendant traveled before pulling over or the manner in which she parked at the curb.

{3}     Officer Kelly greeted Defendant and requested her license, insurance, and registration. While he waited for her to produce the requested documents, he explained that he stopped Defendant because, rather than stop at the stop sign, she had "just rolled through it." Defendant offered a brief explanation, to which Officer Kelly

2

responded by identifying himself as a member of the DWI unit. He testified that upon making contact with Defendant and requesting her documents, he detected a strong odor of alcohol, at which point he told Defendant, "everyone I'm stopping tonight, I'm checking to make sure. I'm just doing a real quick eye check." Officer Kelly administered a horizontal gaze nystagmus (HGN) test to Defendant, *see generally State v. Torres*, 1999-NMSC-010, ¶¶ 35-42, 127 N.M. 20, 976 P.2d 20, and ultimately arrested and charged her with DWI, a stop sign violation, and having no proof of insurance.

**{4}** At a pretrial hearing on Defendant's motion to suppress the stop on the grounds of pretext, Officer Kelly testified on direct examination about his general approach to stop sign violations, explaining that if a person violated the stop sign but did not have any other violations, he tries to "give them the benefit of the doubt," by not writing a citation. However, if there was a stop sign violation coupled with no proof of insurance, no license, or expired tags, then he typically issued a citation. He acknowledged, however, that he used his discretion in deciding whether to issue a citation depending on the circumstances. He explained that most people fail to completely stop at the Oak Street and Tijeras Avenue stop sign and that his determination of who to stop depends on the day, the shift he's working: "If they blow through it, I'll stop them. If they appear to just barely slow down and have ill-regard

3

for the stop sign, I'll definitely stop them. If they slow down and appear to make a pretty good effort at stopping, it's discretionary I guess. It's not the same every night; depends on my mood I suppose." Officer Kelly explained that Defendant did not even attempt to stop at the stop sign.

{5} Finally, Officer Kelly testified that the manner in which he conducted the stop of Defendant is generally the same way that he conducts other stops, starting the encounter with a greeting and request for the driver's license, registration, and insurance. When asked whether he was specifically looking for DWI violations on July 2, 2012, Officer Kelly answered that he was not, explaining that he was "looking for stop sign violations." Officer Kelly testified that, although he was working DWI saturation patrol on that evening, he was also authorized to enforce traffic laws as well. He noted, however, that rolling through a stop sign could be a "potential indicator" of DWI.

{6} On cross-examination, defense counsel questioned Officer Kelly about other citations he had issued, including citations for violations committed at the same location. Defense counsel represented that during an eight-month span, Officer Kelly issued thirty-six citations, eight of which involved violations committed at the Oak Street and Tijeras Avenue stop sign. Of those eight stop sign violations, defense counsel claimed six resulted in DWI arrests. Officer Kelly disagreed with defense

counsel's claims, responding, "I don't think that's accurate at all." Officer Kelly was unable to recall or otherwise quantify the number of citations he had issued at the Oak Street and Tijeras Avenue stop sign in that eight-month span, but testified he would expect many more stops in an eight-month period than those found by defense counsel. The metropolitan court agreed it would consider the evidence for its weight if defense counsel chose to proceed to introduce the complaints of Officer Kelly's other stops, but concluded that unless Officer Kelly was allowed to conduct his own search and allowed to review the results, there was no way to verify defense counsel's representations. Defense counsel did not ask any other questions about or seek to introduce any other evidence of Officer Kelly's other stops. Other than an approximately one-minute-long video of the initiation of the stop, Officer Kelly's testimony was the only evidence offered.

{7}     At the close of the evidence and after the parties had made their arguments, the metropolitan court concluded that Officer Kelly had reasonable suspicion to conduct a traffic stop because he had witnessed Defendant failing to stop at the stop sign. Looking at the totality of the circumstances, the metropolitan court determined that Defendant had not met her burden of showing that there was an unrelated purpose for the stop; it did not make any determination as to whether there would have been reasonable suspicion to support any alleged unrelated purpose. As a result, the

5

metropolitan court concluded that the stop of Defendant was not a pretextual stop. The court also specifically noted in its analysis of the pretext issue that it did not consider whether Officer Kelly had developed reasonable suspicion of DWI after the stop was initiated. Addressing Defendant's roadblock argument, the court noted that there was no evidence Officer Kelly stopped any car without the requisite reasonable suspicion. Emphasizing evidence that Officer Kelly did not stop every car, the metropolitan court concluded the evidence was insufficient to "even get[] close to any kind of roadblock analysis." Following the metropolitan court's decision, Defendant entered a conditional guilty plea, reserving the right to appeal the "denial of [her] motion to suppress/dismiss for pretext issue." Defendant filed an on-record appeal in the district court. The district court, in a memorandum opinion, affirmed the metropolitan court's decision. Defendant appeals.

## II.   STANDARD OF REVIEW

{8}     "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957. "[W]e first look for substantial evidence to support the trial court's factual finding, with deference to the [trial] court's review of the testimony and other evidence[.]" *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861; *see State v. Peterson*, 2014-NMCA-008, ¶ 4, 315 P.3d 354 ("[W]e view the evidence in the light most

6

favorable to the [trial] court's decision and draw all inferences and indulge all presumptions in favor of the [trial] court's ruling." (internal quotation marks and citation omitted)). We then review de novo the trial court's application of law to those facts to determine whether the seizure was reasonable. *Leyva*, 2011-NMSC-009, ¶ 30; *Peterson*, 2014-NMCA-008, ¶ 4.

## III. DISCUSSION

{9}     On appeal, Defendant makes three assertions of error. First, she asserts that the metropolitan court erred in denying her motion to suppress based on pretext. Second, she asserts that the evidence supported a conclusion that Officer Kelly impermissibly used the stop sign in question as a de facto sobriety checkpoint to investigate DWIs. Third, Defendant suggests Officer Kelly improperly expanded the scope of the initial stop. We first address Defendant's pretext argument, then turn our attention to her remaining arguments.

### A. Pretextual Stop

{10}     "[P]retextual traffic stops are not constitutionally reasonable in New Mexico." *State v. Ochoa*, 2009-NMCA-002, ¶ 38, 146 N.M. 32, 206 P.3d 143. A pretextual stop is "a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but is executed as a pretense to pursue a 'hunch,' a different more serious investigative agenda for which there is no reasonable suspicion

7

or probable cause." *Id.* ¶ 25. Our courts follow a three-step approach in determining whether a pretextual stop has occurred:

> First, the State has the burden to establish reasonable suspicion to stop the motorist. If the State fails in its burden, the stop is unconstitutional. Second, if the State satisfies its burden, the defendant may still establish that the seizure was unreasonable by proving that the totality of the circumstances indicates the officer had an unrelated motive to stop the motorist that was not supported by reasonable suspicion. If the defendant does not satisfy the burden, the stop is constitutional. Third, if the defendant satisfies the burden, there is a presumption of a pretextual stop, and the State must prove that the totality of the circumstances supports the conclusion that the officer who made the stop would have done so even without the unrelated motive.

*State v. Gonzales*, 2011-NMSC-012, ¶ 12, 150 N.M. 74, 257 P.3d 894 (citations omitted).

{11}    Here, the parties do not dispute the fact that Defendant committed a stop sign violation. Officer Kelly testified that he observed Defendant fail to stop at the stop sign and that he pulled her over as a result. These facts are sufficient to support Officer Kelly's reasonable suspicion to believe Defendant's driving violated a traffic law, allowing him to stop her for that violation. *See* NMSA 1978, § 66-7-345(C) (2003) (explaining where drivers approaching a stop intersection are required to stop); NMSA 1978, § 66-7-330(B) (1978) (requiring "every driver of a vehicle approaching a stop intersection indicated by a stop sign" to stop as required by Section 66-7-345(C)); *see also State v. Hubble*, 2009-NMSC-014, ¶ 35, 146 N.M. 70, 206 P.3d 579

8

(holding that a reasonable suspicion existed for a traffic stop where an officer observed the defendant violate the turn signal statute). We therefore agree with the metropolitan court's determination that, upon seeing Defendant fail to stop at the stop sign, Officer Kelly had reasonable suspicion to stop Defendant for a traffic code violation. The State having satisfied its burden in this regard, we move to the second step in our pretext analysis.

**{12}** For this step, Defendant must prove that the totality of the circumstances indicates Officer Kelly had a motive to stop Defendant that was unrelated to the stop sign violation and that was not supported by reasonable suspicion. "The totality of the circumstances includes considerations of the objective reasonableness of an officer's actions and the subjective intent of the officer—the real reason for the stop." *Ochoa*, 2009-NMCA-002, ¶ 39. In addition, *Ochoa* set out a non-exhaustive list of factors that are relevant to the totality of the circumstances:

> [W]hether the defendant was arrested for and charged with a crime unrelated to the stop; the officer's compliance or noncompliance with standard police practices; whether the officer was in an unmarked car or was not in uniform; whether patrolling or enforcement of the traffic code were among the officer's typical employment duties; whether the officer had information, which did not rise to the level of reasonable suspicion or probable cause, relating to another offense; the manner of the stop, including how long the officer trailed the defendant before performing the stop, how long after the alleged suspicion arose or violation was committed the stop was made, how many officers were present for the stop; the conduct, demeanor, and statements of the officer during the stop; the relevant characteristics of the defendant; whether the objective

9

reason articulated for the stop was necessary for the protection of traffic safety; and the officer's testimony as to the reason for the stop.

*Id.* ¶ 41. If, after the court considers all these facts, Defendant "has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual." *Id.* ¶ 40.

{13}     In analyzing the second step, the metropolitan court reviewed the *Ochoa* factors and concluded that very few of them favored the defense. Instead, the metropolitan court found that Officer Kelly complied with standard practices when he stopped Defendant, stating, "it seems like he was doing what he was supposed to do." Further, while recognizing that he was a detective, the metropolitan court found that his actions were within the scope of his typical employment duties, as he was working a traffic and DWI saturation patrol. The amount of time Officer Kelly trailed Defendant was also of little assistance to Defendant, as the stop occurred shortly after he saw her run the stop sign, as was the fact that Officer Kelly was the lone officer involved in the stop. Finally, the metropolitan court found that Officer Kelly's observation of Defendant's failure to stop at the stop sign was sufficient to give rise to reasonable suspicion for the stop.

{14}     Recognizing those *Ochoa* factors that supported Defendant's pretext argument, the metropolitan court considered that Officer Kelly was in an unmarked car at the time of the stop and Officer Kelly's statement to Defendant on the video of the stop

that he was giving everyone the HGN test. These factors alone, the metropolitan court concluded, were insufficient to establish a pretextual stop on the part of Officer Kelly.

{15} The testimony presented at trial is sufficient to support the metropolitan court's findings. Even the fact that is most favorable to Defendant—Officer Kelly's statement that he was giving everyone he stopped that night an HGN test—was mitigated by the video evidence presented at the hearing. The video conclusively showed that Officer Kelly introduced himself, asked for Defendant's identification, registration, and insurance, explained why he stopped Defendant, and allowed Defendant to offer a short explanation, all prior to identifying himself as part of the DWI unit and administering the HGN. The metropolitan court acknowledged the possibility that Officer Kelly may have developed reasonable suspicion of DWI prior to administering the HGN. Similarly, though Officer Kelly was working as a member of a DWI saturation patrol at the time of the stop, traffic enforcement like the stop sign violation committed by Defendant was within the scope of his duties as part of that patrol. In sum, Defendant never elicited any testimony that Officer Kelly's presence at the stop sign in question was due to a subjective intent to catch DWI offenders; to the contrary, Officer Kelly's testimony attributed his presence at the stop sign to his belief that the intersection was dangerous.

11

{16} To the extent that Defendant asks this Court to draw inferences regarding Officer Kelly's subjective intent that evening, we decline to do so, as we are required by our standard of review to view the evidence in the light most favorable to the State in this case. *See Gonzales*, 2011-NMSC-012, ¶ 16 (reviewing factual questions under substantial evidence standard and viewing the evidence in the light most favorable to the prevailing party). Because we defer to the metropolitan court's findings and view the record in the light most favorable to the State in this case, we reject Defendant's contention that the metropolitan court erred in finding that the stop was not pretextual. The testimony and evidence adduced at the suppression hearing was sufficient to support findings that all but two of the *Ochoa* factors weighed in favor of the State. We acknowledge that Officer Kelly's statement in the video that he was conducting an HGN test on everyone he stopped is troubling. However, without more, the State presented substantial evidence to support the metropolitan court's conclusion that the totality of circumstances still weighed against finding the stop was pretextual. That, coupled with the metropolitan court's proper finding that Officer Kelly had reasonable suspicion for the initial traffic stop, leads us to conclude the metropolitan court did not err in denying Defendant's motion to suppress.

{17} Defendant likens this case to *State v. Deleon*, No. 30,813, 2013 WL 4511939, mem. op. (N.M. Ct. App. Feb. 14, 2013) (non-precedential). In *Deleon*, the officer in

question conducted a traffic stop after the defendant allegedly made a wide turn leaving a local bar. *Id.* at *1. The officer testified at the suppression hearing that "he had made stops for minor traffic violations, like the one at issue here, in order to investigate DWIs for which he lacked reasonable suspicion." *Id.* The defendant called seven other drivers to testify that, within the past eighteen months, they had each been pulled over for minor traffic violations after leaving the same bar. *Id.* The officer in that case "provided no separately valid reason for stopping [the d]efendant," and as a result, we concluded that the stop itself was not supported by reasonable suspicion. *Id.* at *4. In addition, we concluded that the defense witnesses "established a clear pattern of state police officers patrolling the area around the [b]ar, stopping drivers for minor traffic infractions . . . , first asking the driver whether he or she has been drinking[.]" *Id.*

{18} Defendant suggests that the only difference between this case and *Deleon* is the lack of witnesses who were willing to testify. Instead, in an attempt to analogize this case to the facts of *Deleon*, Defendant argues that "the record shows that [Officer Kelly] and many other APD officers habitually used this stop sign [at Oak Street and Tijeras Avenue] as a fishing hole" to stop drivers who fail to stop at the stop sign so that they could investigate for DWI. In support of Defendant's argument, counsel for Defendant cross-examined Officer Kelly at the suppression hearing about traffic stops

he made in the eight-month period around Defendant's stop. Officer Kelly admitted that between June 2012 and August 2012, he made sixty-two stops for stop sign violations at the same intersection where he stopped Defendant. Of those sixty-two stops, six resulted in DWI charges. Counsel for Defendant also cross-examined Officer Kelly about his citation history between June 2012 and January 2013, representing that her review of court records discovered thirty-six metropolitan court complaints during that time period. Of those thirty-six cases, defense counsel represented, eight were for stop sign violations; and six of those eight involved DWI charges. When asked to confirm these numbers, Officer Kelly testified that he did not believe those numbers were accurate, explaining that he thought he wrote more traffic violations. Counsel for Defendant did not move the introduction of any of the thirty-six metropolitan court complaints, and those complaints are not part of our record on appeal.

{19}     We do not find the facts of this case to be analogous to those of *Deleon*. In *Deleon*, the defendant presented evidence from seven different witnesses, each of whom had been pulled over by State Police after leaving the same bar. *Id.* at *3. Employees of the bar testified that State Police officers parked near the bar and waited for drivers to drive away. *Id.* All but one of the defendant's seven witnesses testified that they were pulled over for making an illegally wide turn and that the first question

14

asked by the officer was whether he or she had been drinking. *Id.* Further, in *Deleon*, the officer acknowledged during the hearing that it was his practice to conduct traffic stops with the sole intention of investigating for DWI. *Id.* at *4. Here, Officer Kelly made no such representation. Instead, he repeatedly testified that he chose to monitor that intersection due to its dangerous nature and in order to make drivers aware of the stop sign there. In addition, while the officer in *Deleon* could not point to a valid reason for the stop in that case, Officer Kelly pointed to the traffic violation and hazard presented by the intersection as justification for the initial stop, stating, "I think it's a dangerous intersection due to the people coming off the freeway." The video of Officer Kelly's initial contact with Defendant further distinguishes this case from *Deleon*, as Officer Kelly greeted Defendant, asked for documentation, and explained his reasons for pulling her over, rather than beginning his encounter with questions blatantly aimed at a DWI investigation, as the *Deleon* officer did.

**{20}** Officer Kelly's admission that six of his sixty-two stop sign traffic stops at Oak Street and Tijeras Avenue resulted in DWI charges, without more, is insufficient to establish a pretextual stop. We do not agree with Defendant that she has "established a clear pattern" of police behavior that warrants reversal on the pretext issue.

**B. Defendant Did Not Reserve Her De Facto Sobriety Checkpoint or Scope of the Stop Arguments**

{21} In her conditional guilty plea, Defendant reserved her right to appeal one issue: "[the] denial of Defendant's motion to suppress/dismiss for pretext issue." Defendant undoubtedly preserved her argument that Officer Kelly was operating a de facto sobriety checkpoint by arguing the issue before the trial court. However, preservation and reservation are not equivalent. *See State v. Handa*, 1995-NMCA-042, ¶ 11, 120 N.M. 38, 897 P.2d 225 (noting "there is a difference between 'preserving' and 'reserving' an issue for appeal" and explaining that preservation occurs by invoking a ruling on the question, and reservation occurs by specifying the issue as a condition to a guilty plea). To reserve an issue, it must be "obvious to the trial court and the state that [the] defendant intends to seek appellate review of the issue and neither the trial court nor the state indicates opposition to the plea under the circumstances." *State v. Sanchez*, 1996-NMCA-089, ¶ 13, 122 N.M. 280, 923 P.2d 1165; *see State v. Hodge*, 1994-NMSC-087, ¶ 27, 118 N.M. 410, 882 P.2d 1 (concluding a valid conditional plea had been entered where the defendant reserved the right to appeal by making clear, on the record, her intention to reserve the issue for appeal and where "[t]he court and the prosecution each acknowledged, without objection, the conditional nature of her plea").

{22} It is clear from the record that everyone involved understood that Defendant intended to reserve the pretext issue in her conditional plea. It is not clear, however, that she reserved her right to appeal the roadblock argument. The district court refused to address the merits of Defendant's de facto roadblock argument on appeal based on Defendant's failure to reserve her right to appeal that issue. Despite being alerted to this possible defect through the district court's opinion, Defendant's brief does nothing to address how she reserved her right to appeal the issue. Defendant cites to nothing in the record to suggest that either the trial court or the State knew of Defendant's intention to seek appellate review of the de facto roadblock issue. She similarly proffers no argument as to why she is entitled to raise the issue on appeal and cites to no authority regarding reservation of right to appeal. Appellate courts are under no obligation to review unclear or undeveloped arguments. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031; *see also State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be"). We therefore decline to address the merits of her de facto roadblock argument.

{23} With regard Defendant's argument that Officer Kelly impermissibly expanded the scope of the traffic stop, Defendant's brief focuses solely on the merits of that argument and an explanation of how she preserved the argument. *See* Rule 12-216(A)

NMRA (2014, recompiled and amended as Rule 12-321 NMRA, effective Dec. 31, 2016) ("To preserve a question for review, it must appear that a ruling or decision by the [trial] court was fairly invoked[.]"). We need not determine whether Defendant *preserved* her argument, however, because it is clear from the record that Defendant did not *reserve* her right to appeal it, just as she did not reserve her roadblock claim. Even if Defendant is correct in her assertion that she preserved her argument, we still do not address it on appeal. Defendant cites to no authority to explain why preservation alone—without having reserved the right to appellate review—is sufficient to trigger our review. Again, she offers no argument as to why she is entitled to raise the issue on appeal despite her failure to reserve the right to appeal it. As Defendant failed to reserve her right to appeal the scope of the search, we decline to address the merits of that argument.

## III.    CONCLUSION

{24}    We affirm the metropolitan court's decision.

{25}    **IT IS SO ORDERED.**

_____

**JULIE J. VARGAS, Judge**

18

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**MICHAEL E. VIGIL, Judge**